IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| STACY HALL, | CV 16-00058-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| BUDDY MYOTTE, et al., | |
| Defendants. | |

Plaintiff Stacy Hall filed a 169-page Complaint pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated when he injured his shoulder after falling off a desk on July 6, 2013, while incarcerated at Montana State Prison ("MSP").  (Doc. 2.)  Mr. Hall then filed a motion for leave to file an amended complaint and submitted a 163-page Amended Complaint which adds an additional Defendant, some additional claims, and made minor changes to the body of the original complaint.  (Doc. 8.)

Rule 15 of the Federal Rules of Civil Procedure requires the Court to "freely give leave [to amend] when justice so requires."  Fed.R.Civ.P. 15(a)(2).  As Defendants have not yet appeared and the amendments are minor, the Court will grant the motion for leave to file an amended complaint.  Nevertheless, the Amended Complaint fails to state a claim upon which relief may be granted and

1

therefore this matter should be dismissed.

# I. STATEMENT OF THE CASE

## A. Parties

Mr. Hall is a state prisoner proceeding without counsel.  He is currently incarcerated in South Dakota but all incidents at issue occurred at MSP.

Mr. Hall lists the following Defendants:  Buddy Myotte, Alvin Fode, Trisdan Kohut, PA Fisk, Mark Henderson, Jane McMahon, Pamela Ward Monaco, Leslie Thornton, Rosanna Hengst, Dan Curran, Gutherie Lewis, Lance Griffin, Samantha Peterson, Hiedi Abbott, Cyndy Hiner, Cathy Redfern, Michael Zuber, Myron Beeson, Tom Wood, Leroy Kirkegard, Jane Lamoure, Mike Batista, E. Shane Spears, Jonathan Pine, Stephen Powell, and various unknown Does, all sued in their individual capacities.  (Complaint, Doc. 2 at 4-8.)  In his Amended Complaint, Mr. Hall added Paul Lucier as a Defendant.  (Doc. 8-1.)

## B. Facts[1]

On January 17, 2013, Mr. Hall was incarcerated at MSP and assigned as an Inmate Unit Worker in LHU-2 to perform general custodial duties.  On July 7, 2013, Mr. Hall and another inmate were instructed to clean up where other inmates had spread fecal matter on the walls and ceilings of their cells.  When Mr. Hall

---

[1]All facts come from Mr. Hall's Amended Complaint, Doc. 8-1 9-138.

asked Defendants Fode and Myotte what equipment was available to clean high places in the cells, Defendants told Mr. Hall he could use chairs and the rolling table available in the unit (for cleaning on the main floor) and the fixtures in the cells (concrete bed slab, desk, and metal sink/toilet) for cleaning in high places within the cells.  Mr. Hall stood on a desk in the cell in an attempt to clean the ceiling but slipped on some water and fell onto the floor injuring his right shoulder.

Within 30 minutes of his injury, Mr. Hall was transported to the infirmary. He was transported to the Deer Lodge County Medical Clinic ("DLCMC") within 45 minutes to one hour after that.  There, X-rays were taken and Mr. Hall's arm was placed in an immobilizer/arm sling.  He was then returned to MSP.

On July 9, 2013, Mr. Hall was transported to Pintler Surgical Specialists where he was seen by an orthopedic specialist, Dr. Pine.  Dr. Pine initially opined that Mr. Hall needed corrective surgery, but the MSP medical department would not approve a CAT scan at that time and he was returned to MSP.

Mr. Hall saw Dr. Kohut at the prison on July 10, 2013, and on July 11, 2013, Hall was taken to DLCMC where a CAT scan was done.  On July 15, 2013, he was transported to see Dr. Pine again at Pintler Surgical Specialists.  Dr. Pine explained that while surgery was warranted he was concerned that it would do more harm

3

than good at that time.  Dr. Pine told Mr. Hall to maintain complete immobilization for two more weeks then begin physical therapy assisted by a specialist.

Mr. Hall was seen by Dr. Piranian at the prison on July 19, 2013.  He was taken to Premier Physical Therapy and seen by E. Shane Spears, MPT on July 23, 2013.  Mr. Spears spoke with Mr. Hall but because Dr. Pine had ordered that the arm remain immobilized until July 29, 2013, Mr. Hall was returned to the prison.

Mr. Hall returned to Premier Physical Therapy on August 5, 2013 and received physical therapy from Mr. Spears.  Mr. Spears advised Mr. Hall to do the same type of movements back at the prison with the assistance of a nurse.

On August 6, 2013, Mr. Hall sent a request asking for assistance from medical staff in doing his exercises.  A nurse saw Mr. Hall on August 7, 2013, but advised him that there were not enough medical staff to help inmates with physical therapy and he would need to perform his exercises on his own.

Mr. Hall was seen by prison doctor Dr. Kohut on August 12, 2013.  Dr. Kohut gave Mr. Hall additional exercises for his shoulder.  Mr. Hall complained about continued pain and Dr. Kohut advised him to ask staff for over the counter Tylenol or to purchase it from the canteen.

Mr. Hall was taken to DLCMC again on August 14, 2013 for a second set of X-rays.  Mr. Hall sent kites on August 15, 2013, complaining about increased pain

4

and internal bleeding.  He was seen by a registered nurse on August 16, 2013, who noted the swelling and blackened skin from Mr. Hall's elbow to his shoulder.

Mr. Hall was seen on August 21, 2013, by a physicians assistant who prescribed medication for nausea and advised him to request a second opinion.  He requested a second opinion that day but it was denied on August 26, 2013, noting that Mr. Hall had been seen by multiple MSP providers, an orthopedic physician, and a physical therapist.

Mr. Hall had a follow-up appointment with Dr. Pine at Pintler Surgical Specialists on September 5, 2013.  Dr. Pine told Mr. Hall he would be recommending a more aggressive physical therapy plan.  Dr. Pine again explained his reasons for not wanting to do surgery at that time.

Mr. Hall's prescription for Tramadol ended on September 13, 2013, at which time he had been on Tramadol for 67 days.  He alleges he suffered withdrawal symptoms including anxiety, mood swings, delusions, nausea, diarrhea, hot and cold spells, fatigue, electrical shocks throughout his nervous system, fitful sleep, and insomnia.

On September 30, 2013, Mr. Hall initiated a grievance against Dr. Kohut for staff misconduct after another inmate told Mr. Hall that he had heard Dr. Kohut discussing Mr. Hall's medical information with a correctional officer.

On September 19, 2013, Mr. Hall was seen by Dr. Stephen Powell, an orthopedic surgeon at Northern Rockies Orthopedics in Missoula, Montana and X-rays were taken.  Dr. Powell commented that the fracture was healing.  He opined that Mr. Hall may be able to regain about 90% - 95% mobility with proper physical therapy but that recovery could take up to a year.

Mr. Hall told PA Fisk on September 21, 2013, that he wanted to discontinue the nausea medication.  He saw Dr. Kohut on September 23, 2013, for a liver function test but they also discussed his shoulder.  Mr. Hall was evaluated by a nurse on September 30, 2013, and he was again seen by Dr. Kohut on October 7, 2013.  Dr. Kohut examined him, provided him with an analgesic balm, and discussed exercises he could do.  He was seen by nurse on October 8, 2013.

On October 11, 2013, Mr. Hall received a prescription medication for Meloxicam from Dr. Kohut for treatment of pain.  The medication, however, caused Mr. Hall to break out in hives.

On October 15, 2013, Mr. Hall filed a petition for writ of mandamus with the Montana Supreme Court raising the same allegations as brought herein in an effort to receive medical treatment.  The petition was denied.  Montana Supreme Court Cause No. OP 13-0691.

Mr. Hall was scheduled for a second PT session with Mr. Spears on October

16, 2013, but it was canceled because Captain Zuber refused to allow Mr. Hall to be free from restraints during PT.

Mr. Hall saw Dr. Kohut on October 21, 2013, with regard to the Meloxicam medication.  Dr. Kohut replaced the medication with Ibuprofen, 400 mg tablets. Mr. Hall was seen by a nurse on October 26, 2013, and on October 30, 2013, he was taken to St. James Hospital for an MRI of his shoulder.

Mr. Hall had PT with Mr. Spears on November 4, 2013, December 16, 2013, December 27, 2013, January 8, 2014, February 3, 2014, February 10, 2014, March 24, 2014, May 21, 2014, May 28, 2014, June 4, 2014, and June 11, 2014.  He was going to be transported to PT on January 15, 2014, but missed the appointment because Captain Zuber had again given orders that Mr. Hall's restraints could not be removed.

During the December 27, 2013 appointment, Mr. Spears recommended that Mr. Hall do cable rows and dumbbell lifts at the gym at least once a day.

Mr. Hall was seen by Dr. Kohut on November 19, 2013, and Dr. Rantz (another doctor at MSP) on December 16, 2013.  He was seen again by Dr. Kohut on December 30, 2013, but Dr. Kohut refused to arrange for Mr. Hall to have access to exercise equipment stating that it was a security issue.  He was seen by Dr. Perinian on January 17, 2014, to evaluate the need for additional physical

therapy.

On February 2, 2014, Mr. Hall asked for a Health Service Report (HSR) alerting officers of the severe restrictions in the range of motion in his right shoulder.  That request was denied.  He requested a bottom bunk HSR on February 26, 2014, which was granted on March 4, 2014.

He was seen by Dr. Kohut for follow-up visits on March 10, 2014, March 31, 2014, June 19, 2014, July 21, 2014, August 4, 2014, August 25, 2014, October 6, 2014, and November 10, 2014.

He was seen by Dr. Pine on March 26, 2014, who explained that it appeared that Mr. Hall had a ruptured tendon which was not surprising given the nature of his injury.  Dr. Pine explained that it was possible that surgery could have repaired the injury but it was too late and he would not have done the surgery because of the difficulty involved in working with tendons.

Mr. Hall was prescribed Tramadol for pain from July 7, 2013, to September 13, 2013, from April 18, 2014, to May 1, 2014, from May 13, 2014, to June 8, 2014, and from June 10, 2014, until September 7, 2014.  He was prescribed Meloxicam from October 11, 2013, to October 21, 2013.  He was prescribed Tramadol on April 18, 2014, for 14 days until May 1, 2014.  He was placed back on Tramadol from May 13, 2014, until June 8, 2014 and from June 10, 2014 until

September 7, 2014.

Mr. Hall was transferred to South Dakota on December 9, 2014.

### C.  Allegations

Mr. Hall claims that Defendants violated his state and federal rights with regard to the following:  failure to provide proper training, instruction, and equipment for cleaning cells (Amd. Complaint, Doc. 8-1 at ¶¶ 501 - 506); failure to immediately transport him to a proper medical facility after his injury (Id. at ¶¶ 507-508; failure to provide proper pain medications (Id. at ¶¶ 509-510; 519-520; 529-532); refusal to allow a CT scan of his shoulder (Id. at ¶¶ 511-512); failure to follow the orders of Dr. Pine regarding the immobilization of his arm (Id. at ¶¶ 513 - 514); failure to provide proper physical therapy (Id. at ¶¶ 515 - 518); delays in seeing and treating Mr. Hall (Id. at ¶¶ 521 - 522); delaying medical treatment in retaliation for filing grievances (Id. at  ¶¶ 523 -524); refusing to release Mr. Hall from restraints for treatment (Id. at ¶¶ 525 - 526); denial of gym time and exercise equipment (Id. at ¶¶ 527 - 528); failure to conduct proper examinations of his shoulder (Id. at ¶¶ 533 - 534); failure to advise security officers of Mr. Hall's injuries (Id. at ¶¶ 535 - 536); failure to take action on his grievances (Id. at ¶¶ 537 - 538); and improper disclosure of his medical information (Id. at ¶¶ 539 - 540).

The Court will separately analyze Mr. Hall's claims regarding his fall on

July 7, 2013, his medical care claims, his retaliation claim, his grievance claim, and his disclosure of medical information claim.

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

### A.  Standard

As Mr. Hall is a prisoner proceeding in forma pauperis, the Court must screen his Amended Complaint under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A. These statutes require the Court to review a prisoner's complaint and dismiss it or portions there of before it is served upon the defendants if it finds that the complaint is "frivolous," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune."  A complaint is frivolous, if it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must set forth "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  *Id.*  It must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Bell*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

10

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson*, 551 U.S. at 94; *Cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## B.  Analysis

### 1.  Slip and Fall[2]

Mr. Hall alleges that Defendants' failure to provide him with the proper equipment and instruction to use the desk and other fixtures in the cell to reach high places for cleaning placed Mr. Hall at an unreasonable risk of danger to his health and safety and constitutes deliberate indifference or reckless disregard for Hall's health and safety as proscribed by the Eighth Amendment to the United States Constitution.  (Amd. Complaint, Doc. 8-1 at ¶¶ 501 - 506.)

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  "[T]he treatment a prisoner receives in prison and the conditions under

---

[2]Mr. Hall's original Complaint was filed on July 13, 2016 and he contends that he delivered that Complaint into the prison legal mail system at the South Dakota State Penitentiary on July 8, 2016.  He also contends that the statute of limitations was tolled between July 31, 2013 and September 3, 2013 during the pendency of his grievance on the issue.  (Mtn to Amend Filing Date, Doc. 6.)  The Court makes no determination as to the statute of limitations issue in this case.

which he is confined are subject to scrutiny under the Eighth Amendment."
*Helling v. McKinney*, 509 U.S. 25, 31 (1993) (citations omitted).  "The [Eighth]
Amendment also imposes duties on [prison] officials, who must provide all
prisoners with the basic necessities of life such as food, clothing, shelter,
sanitation, medical care and personal safety."  *Farmer*, 511 U.S. at 832.  A prison
official violates the Eighth Amendment when (1) the deprivation alleged is
"objectively, sufficiently serious" and (2) the "prison official possesses a
sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834 (citing *Wilson v.
Seiter*, 501 U.S. 294, 297–98 (1991)).

Mr. Hall's slip and fall claim fails on both the objective and subjective
prong.  First, the Court does not find that standing on a desk in order to clean a
ceiling places an inmate in objectively sufficiently serious danger.  Secondly, there
is no allegation that any prison official possessed a sufficiently culpable state of
mind regarding Mr. Hall's safety.  Mr. Hall was instructed to clean a cell.  When
asked how to reach high places he was given permission to stand a bed, desk, or
toilet.  There is no allegation that any other inmate had fallen under such
circumstances or that Mr. Hall or any other inmate complained that to do so would
be unsafe.

Moreover, Mr. Hall inspected the cell that needed to be cleaned and sought

12

"the needed equipment to complete the job" including a chair to use inside the cells.  (Amd. Complaint, Doc. 8-1 at ¶ 64.)  Although the inmates were not provided Haz-Mat gear, their other requests (including the request for a chair) were approved.

Mr. Hall made his own decision to stand on a wet desk in an attempt to clean the ceiling in the cell.  This was not a situation where he could not provide for his own safety.  *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985).  He could have dried off the desk and he could have asked the other inmate to assist him when he was standing on the desk.  Merely telling Mr. Hall that he could stand on the desk does not rise to the level of a constitutional violation.  The Court does not find that standing on a desk creates a serious safety hazard.  *See Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996).  This claim should be dismissed.

### 2.  Denial of Medical Care

The Eighth Amendment requires that prisoners receive adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate indifference analysis.  First, a prisoner must show a

13

"serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious'
medical need exists if the failure to treat a prisoner's condition could result in
further significant injury or the 'unnecessary and wanton infliction of pain.'"
*McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (internal citation
omitted).

Second, a prisoner must show that the defendant's response to that need was
deliberately indifferent. *Jett*, 439 F.3d at 1096. This second prong is met if the
prisoner demonstrates (1) a purposeful act or failure to respond to a prisoner's
medical need and (2) harm caused by the indifference. *Id.* Prison officials are
deliberately indifferent if they deny, delay, or intentionally interfere with medical
treatment. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

For purposes of this Order, the Court will assume that Mr. Hall's injury to
his shoulder constituted a serious medical need. Yet, Mr. Hall has not presented
sufficient factual allegations to plausibly suggest that any named defendant was
deliberately indifferent to that medical need. Mr. Hall spent more than a hundred
pages detailing the medical care he received for his shoulder injury. He was seen
by an orthopedic specialist on four separate occasions between July 9, 2013, and
March 26, 2014, and received a second opinion from a different orthopedic
specialist on September 19, 2013. He was seen by Dr. Kohut and other MSP

physicians on at least sixteen separate occasions between July 10, 2013, and

November 10, 2014.  He was seen by nurses or physicians assistants on at least ten

other occasions between August 7, 2013, and October 26, 2013.  He had X-rays

taken of his shoulder three different times, in addition to a CAT scan and an MRI.

He had ten physical therapy sessions and he was given pain medications almost

continuously between July 7, 2013, and September 7, 2014.

What Mr. Hall's 169-page Complaint and 163-page Amended Complaint

demonstrate more than anything is that the medical personnel at MSP provided him

with an abundance of medical care for his shoulder injury.  At most, Mr. Hall

complains that Defendants did not provide medical care with the best attitude.  He

may not agree with the level of care that he received but "[a] difference of opinion

between a physician and the prisoner - or between medical professionals -

concerning what medical care is appropriate does not amount to deliberate

indifference."  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing

*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled in part on other*

*grounds, Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v.*

*Rotman*, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90

F.3d 330, 332 (9th Cir. 1986)).  Mr. Hall "must show that the course of treatment

the doctors chose was medically unacceptable under the circumstances and that the

defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).  There is no such allegation in the Amended Complaint.

Mr. Hall has not alleged that anyone acted in conscious disregard to an excessive risk to his health.  He was treated for his shoulder injury which sounds incredibly painful but based on the facts that he has alleged it appears that Defendants provided him with a lot of medical care for that injury.  The medication may not have been the most effective but that does not establish a constitutional violation.  Again, this simply seems to be a disagreement between Mr. Hall and the doctors.  He may have wanted surgery for his shoulder but two different specialists told him that surgery was not necessary.

Thus, the Court finds that Mr. Hall's allegations that Defendants failed to immediately transport him to a proper medical facility after his injury (*Id.* at ¶¶ 506-507; failed to provide proper pain medications (*Id.* at ¶¶ 508-509-, 518-521, 528 - 531); refused to allow an immediate CAT scan of his shoulder (*Id.* at ¶¶ 510 - 511); failed to follow the order of Dr. Pine regarding the immobilization of his arm (*Id.* at ¶¶ 512 - 513); failed to provide proper physical therapy (*Id.* at ¶¶ 514 - 517, 524, 525); denied him gym time and exercise equipment (*Id.* at ¶¶ 526, 627); and failed to conduct proper examinations of his shoulder (*Id.* at ¶¶ 532, 533) are

16

insufficient to state a claim for deliberate indifference to a serious medical need.

### 3. Retaliation

Mr. Hall alleges Dr. Kohut delayed medical treatment in retaliation for Mr. Hall's filing grievances. In order to state a claim under 42 U.S.C. § 1983 for retaliation, a prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. *See Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), *see also Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a

17

legitimate penological purpose.  *See Rhodes*, 408 F.3d at 568.

As set forth above, the Court does not find that there was a delay in providing medical treatment to Mr. Hall.  Mr. Hall admits to filing a multitude of grievances and yet he was still provided a vast amount of medical care for his shoulder injury.  His retaliation claim fails as a matter of law.

### 4.  Grievances

Although inmates have a First Amendment constitutional right of access to such grievance procedures as a prison affords, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), they do not have a due process right in the processing of their inmate appeals.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to specific grievance procedure; claim that prison officials interfered with appeal thus did not state due process violation); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)(no entitlement to grievance procedure). Therefore, Mr. Hall's allegations that his grievances were improperly denied do not state a claim for relief.

### 5.  Disclosure of Medical Information

Mr. Hall alleges Dr. Kohut's disclosure of his medical information to non-medical correctional officers while in the presence of inmates, in a manner intended for purposes unrelated to medical needs, constituted a violation of his

18

Fifth and Fourteenth Amendment rights under the United States Constitution to medical privacy. (Amd. Complaint, Doc. 8-1 at 539 - 540.) Mr. Hall claims that in September 2013 another inmate told him that he had heard Dr. Kohut discussing Mr. Hall's medical information with a correctional officer. (Amd. Complaint, Doc. 8-1 at 65, ¶ 275.) Mr. Hall filed a grievance regarding this allegation on September 30, 2013, and his appeal of the denial of that grievance was ultimately denied by Director Batista on January 10, 2014. (*Id.*)

The U.S. Constitution protects a right to privacy regarding "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). An incarcerated individual "retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Turner v. Safley*, 482 U.S. 78, 95 (1987) (quotation omitted).

The Ninth Circuit recognizes a constitutional right to the privacy of medical information in a variety of contexts. Courts are required to "balance the following factors to determine whether the governmental interest in obtaining information outweighs the individual's privacy interest: (1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need

19

for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004).  However, as to prisoner medical records, the Ninth Circuit recently explained that inmates "do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them." *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010).  Examples of such an interest include the need "to protect prison staff and other prisoners from communicable diseases and violence, and to manage rehabilitative efforts."  *Id.* at 534-35.

Here, there is no allegation what information was disclosed or under what circumstances.  Mr. Hall failed to allege facts sufficient to even show that Dr. Kohut disclosed any private information.  *See Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) (discussing the constitutionally protected privacy interest).  Under the facts alleged by Mr. Hall it is quite possible that Dr. Kohut was doing precisely what Mr. Hall faults him for elsewhere in his complaint, advising security officers regarding the medical limitations Mr. Hall's arm/shoulder.  (Amd. Complaint, Doc. 8-1 at ¶¶ 535 -536.)

Mr. Hall's allegations are simply insufficient to state a privacy claim.

## III.  STATE LAW CLAIMS

20

Should Judge Christensen adopt the recommendation to dismiss Mr. Hall's federal claims, the Court should exercise its discretion and decline to exercise supplemental jurisdiction over the remaining claims brought under state law as all federal claims will have been dismissed and such is appropriate in the circumstances of this case.  28 U.S.C. § 1367(c)(3); *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal law claims are eliminated before trial, the balance of factors  . . .  will point towards declining to exercise jurisdiction over the remaining state-law claims' " (citation omitted)).

This Court has not invested its judicial energies as to the state-law claims to such an extent that would justify retaining jurisdiction.  Nor is it apparent that judicial economy would be served by retaining jurisdiction over this case. Although it might be more convenient for Mr. Hall if the Court retained jurisdiction, fairness and comity would be served by declining jurisdiction.

Based upon the foregoing, the Court issues the following:

## ORDER

Mr. Hall's Motion for Leave to File an Amended Complaint (Doc. 8) is GRANTED.  The Clerk of Court is directed to file Mr. Hall's Amended Complaint (Doc. 8-1).

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Mr. Hall's federal claims for relief should be DISMISSED WITH PREJUDICE for failure to state a claim.

2.  The Court should decline to exercise supplemental jurisdiction over the remaining claims brought under state law and all state law claims should be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3).

3.  The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.  The record makes plain the Amended Complaint lacks arguable substance in law or fact.

5.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Hall failed to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS &

**RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Mr. Hall may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[3]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 1st day of June 2017.


　　　　　　　　　　　　　_/s/ John Johnston_____
　　　　　　　　　　　　　John Johnston
　　　　　　　　　　　　　United States Magistrate Judge

---

[3]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.