
FILED
OCT 26 2017
Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| STACY HALL,<br><br>Plaintiff,<br><br>vs.<br><br>BUDDY MYOTTE, et al.,<br><br>Defendants. | CV 16–58–H–DLC–JTJ<br><br>ORDER |

United States Magistrate Judge John T. Johnston entered findings and recommendations in this case on June 1, 2017, recommending that Plaintiff Stacy Hall's ("Hall") complaint be dismissed for failing to state a claim upon which relief may be granted. Hall timely filed an objection to the findings and recommendations, and so is entitled to a de novo review of those findings and recommendations to which he specifically objects.[1] 28 U.S.C. § 636(b)(1)(C). This Court reviews for clear error those findings and recommendations to which no party objects. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

---

[1] Hall also filed a request to file an over length brief in support of his objections. (Doc. 13-1.) The Court grants Hall's motion to file an over length brief.

Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## BACKGROUND

Hall was an inmate at the Montana State Prison at all times pertinent to his claims.[2] He filed a civil rights petition against the following Defendants: Buddy Myotte, Alvin Fode, Trisdan Kohut, PA Fisk, Mark Henderson, Jane McMahon, Pamela Ward Monaco, Leslie Thornton, Rosanna Hengst, Dan Curran, Gutherie Lewis, Lance Griffin, Samantha Peterson, Hiedi Abbott, Cyndy Hiner, Cathy Redfern, Michael Zuber, Myron Beeson, Tom Wood, Leroy Kirkegard, Jane Lamoure, Mike Batista, E. Shane Spears, Jonathan Pine, Stephen Powell, and various unknown Does. Hall alleges multiple claims relating to Defendants' alleged violation of his state and federal rights with regard to a slip and fall accident and improper medical treatment. (See Doc. 10 at 139–153.)

Because the parties are familiar with the facts of this case they will only be included here as necessary to explain the Court's order.

Hall makes nine specific objections to Judge Johnston's findings. They will be addressed separately below.

---

[2] Hall is currently incarcerated in South Dakota.

# DISCUSSION

## I. Factual Summations

Hall contends that Judge Johnston's summary of the facts of this case inaccurately recited Hall's Amended Complaint. The Court disagrees and finds that Judge Johnston thoroughly summarized the facts. Nonetheless, this Court has read the entirety of the 163-page Amended Complaint and will consider all of the factual allegations made by Hall.

## II. Slip and Fall

In regards to the slip and fall claim, Hall objects to the findings because he "believes the facts as presented in his complaint state a valid claim for which he may be entitled to some relief." (Doc. 13 at 12.) Hall argues that the safety hazards in his working conditions at MSP were plainly obvious, that he informed the guards they were unsafe, and that the staff ignored his complaints, all of which support an Eighth Amendment claim.

Under *Farmer v. Brennan*, the United States Supreme Court found that an Eighth Amendment violation under prison conditions occurs when: (1) the deprivation alleged must be "objectively, sufficiently serious," and (2) the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" 511 U.S. 825, 834 (1994). "To violate the Cruel

and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind." *Id.* This is one of "deliberate indifference" to one's health or safety, or acting recklessly. *Id.* at 834–835. "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 835.

Hall clarifies his four Eighth Amendment claims in his objection: (1) that he was compelled to perform his work duties or face disciplinary action; (2) that he was refused proper equipment with which to reach high places after complaining of the risks to safety; (3) that he was forced to perform hazardous clean-up duties that brought him into direct contact with human fecal matter without training, certification, or the proper protective gear, and (4) that he was refused proper protective gear of any kind when ordered to clean human fecal matter from three cells covered in feces. (Doc. 13 at 11.) Taking his allegations as true, his first argument fails because the deprivation alleged is not objectively, sufficiently serious. As in any type of work situation, it is normal to be subject to recourse if you fail to perform your work duties. Further, Hall fails to allege a sufficiently serious threat.

Second, the fact that the prison official told Hall to use the equipment in the cell to stand on does not pose an objectively, sufficiently serious harm. Judge

Johnston found and this Court agrees that standing on a prison bed, desk, or toilet did not pose an objective risk and Hall did not complain that to do so would be unsafe. Hall's only request was for a step ladder, which the officers appropriately considered to be a security risk and communicated to Hall. (Doc. 10 at 13.) Moreover, there is no allegation that any prison official asked him to stand on the cell furniture with a culpable state of mind.

Finally, Hall's two allegations that the prison officials deliberately disregarded the safety risks of cleaning up human fecal matter without proper training and equipment also fail as a matter of law. Hall claims that MSP usually used the Low Side Haz-Mat work crew to clean contaminated cells, and that the crew had specific training, solvents, and protective gear. Although the Haz-Mat crew initially cleaned the cells, Hall and prisoner Klatt were asked to finish cleaning the cells. (Doc. 10 at 14–15.) Hall explains that he and Klatt inspected the cells and determined the necessary cleaning supplies and "protective Haz-Mat gear" to finish the job. (Doc. 10 at 16.) However, Defendant Myotte stated "that the gear was not necessary since they would get a change of clothing and a shower after the work was completed." *Id.* Hall then requested "face mask shields located in the unit's supply closet to protect their eyes from contaminated water splashes" but that "Defendant Myotte denied the request stating that the shields were for

officer use only." (Doc. 10 at 17.)

Hall has failed to allege any damages related to his health after cleaning the cells. Because Hall fails to allege that he suffered physical injury as a result of the conduct challenged in this action, he is precluded from pursuing a damages claim premised on mental or emotional injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act"). However, "[t]o the extent that [plaintiff] has actionable claims for compensatory, nominal or punitive damages—premised on violations of his [constitutional] rights, and not on any alleged mental or emotional injuries . . . the claims are not barred by § 1997e(e)." *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002). Construing Hall's Complaint liberally, in relation to his Eighth Amendment claims related to cleaning the human feces without proper safety equipment, Hall has failed to allege any injury whatsoever as a result of the conduct. All of Hall's damages arise from the shoulder injury he received after falling off of the desk. Thus, to the extent Hall may have a claim, he can only recover nominal damages for an Eighth Amendment violation.

Regardless, Hall's claims are without merit. Even though Hall was denied

protective equipment, he was only exposed to the fecal matter for a short period of time and, again, Defendant Myotte instructed Hall that instead of the equipment he would receive a shower and new clothing following completion of the work. Because the exposure was minimal and Hall was offered a shower, the officers were not deliberately indifferent to Hall's health. *See, e.g., Hutto v. Finney*, 437 U.S. 678, 686–687 (1978) ("A filthy, overcrowded cell and a diet of 'grue[l]' might be tolerable for a few days and intolerably cruel for weeks or months."); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir.1996) (finding that a four-day exposure to raw sewage from overflowing toilet in cell not cognizable because it was a "de minimis imposition and thus [did] not implicate constitutional concerns"); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir.1995) (determining that there was a cognizable Eighth Amendment violation where serious health hazards lasted nine months, including inoperable toilets, insect infestations in stagnant pools of water and a lack of cold water when temperatures were above 100 degrees). Consequently, Hall's claims do not rise to a cognizable Eighth Amendment claim. The Court affirms Judge Johnston's finding on these claims, and they are dismissed.

### III. Denial of Medical Care

Judge Johnston also found that all of Hall's claims relating to the denial of

his medical care do not present sufficient factual allegations to plausibly suggest that any named defendant was deliberately indifferent to his medical health needs. (Doc. 9 at 16–17.) When prison staff discovered that Hall had fallen off the desk in the cell he received adequate medical treatment. He was immediately transferred to the infirmary, following which he was then transferred to the Deer Lodge Community Medical Center ("DLCMC"). He was seen and evaluated by Pintler Surgical Specialists and Premier Physical Therapy of Deer Lodge. He was also evaluated many times by Dr. Kohut at MSP. (Doc. 9 at 18–30.) Dr. Pine at DLCMC concluded that surgery was not necessary. (Doc. 9 at 27.) Thus, Judge Johnson determined that Hall failed to show that any of the staff members purposefully fail to respond to his medical needs. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Hall contends that Judge Johnston mischaracterized his medical care claims as being a mere disagreement between him and the doctors. (Doc. 13 a 12.) Hall believes his Complaint "screams of the allegation that the defendants individually and collectively acted in conscious disregard for Hall's serious medical condition." (Doc. 13 at 16.) He also reiterates the same claims made before Judge Johnston that the prison staff: (1) failed to immediately transport Hall to an adequately staffed medical facility; (2) failed to provide proper pain medication,

interfered with treatment once prescribed; (3) failed to inquire further and treat Hall's severe pain, interfered with the administration of Hall's pain medication; (4) refused to order an immediate CAT scan of his shoulder; (5) failed to follow the order of Dr. Pine regarding the immobilization of Hall's arm; (6) failed to provide proper physical therapy; (7) denied him gym time and exercise equipment for physical therapy; (8) and failed to conduct proper examinations of Hall's shoulder. (Doc. 13 at 16–35.)

Upon review of the record, the Court finds no error with Judge Johnston's finding that no prison staff member was deliberately indifferent to Hall's medical care. He received medical care immediately upon injuring himself in the cell, and was seen by multiple doctors and specialists. Although there may have been minor delays in treatment due to procedures at MSP, Hall has failed to allege that any staff member purposefully refused to respond to his medical needs and did so with a culpable state of mind.[3] *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th

---

[3] Hall also moves the Court to take judicial notice of the holding in *Gill v. Mooney*, 824 F.2d 192, 195–196 (2d Cir. 1987) when evaluating Hall's objection regarding Defendants denial of gym time and exercise equipment for physical therapy. (Doc. 14.) In *Gill*, the Second Circuit found that "[p]rison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors." *Id.* at 196. The Court takes judicial notice of this rule of law. However, Hall has failed to plead sufficient facts to show that any named Defendant deliberately defied a doctor's orders. While Hall claims that specialist Dr. Spears requested that he get access to the gym facilities at the prison, Dr. Kohut reviewed Dr. Spears' opinion and determined that such access presented a security issue and that Hall had been provided adequate education on how to perform self-exercises in his cell. (Doc. 10 at 89–90.) To the extent that the prison medical staff disagreed with the outside physical therapist, that is merely a difference of opinion, and does not constitute a deliberate indifference to Hall's medical needs.

Cir. 2014) ("A prison official is deliberately indifferent under the subjective element of the test only if the official 'knows of and disregards an excessive risk to inmate health and safety.'"). To the contrary, Hall pleads many facts which indicate that MSP staff did not ignore Hall's medical needs associated with his serious shoulder injury and ensured he was seen by specialists and physical therapists to address his reports of pain. Thus, Judge Johnston's findings regarding Hall's claims for denial of medical care are affirmed.

## IV. Retaliation

Hall also claims that Dr. Kohut delayed medical treatment in retaliation for the grievances filed by Hall. Judge Johnston recommended dismissal of this count because there was no delay in providing medical treatment and that "Hall admits to filing a multitude of grievances and yet he was still provided a vast amount of medical care for his shoulder injury." (Doc. 9 at 18.)

Hall argues that he has presented facts sufficient to state a claim for retaliation as evidenced by the Defendants' failure to supply adequate medical treatment which lead to additional injuries (ruptured tendon), unnecessary pain and suffering, and a longer recovery period. (Doc. 13 at 38.) Specifically, Hall contends that Dr. Kohut did not address his pain and suffering because he viewed him as a nuisance, and that he agreed to provide better treatment if Hall would

cease filing grievances. Further, he alleges that PA Fisk warned him that if he did not stop filing kites that his treatment would be reduced to a bare minimum.

To state a claim for retaliation, a plaintiff must establish that: (1) a prison official took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. *See Rhodes v. Robinson*, 408 F.3d 559, 568–569 (9th Cir. 2005). The Court agrees with Judge Johnston that Hall has failed to allege the first element because instead of taking an "adverse action" against Hall when he was filing grievances, the very opposite happened. MSP continually offered Hall appointments with the infirmary and follow-up appointments with specialists outside of the prison to treat his complaints of shoulder pain. Consequently, this claim is without merit.

## V. Grievances

Next, Hall claims that his grievances were improperly denied by MSP. He contends that "the claim [he] attempted to frame is one which connects supervisory staff to the harm [he] suffered by showing their personal involvement by failing to remedy the conditions he brought to their attention through the grievance process. (Doc. 13 at 39.)

Judge Johnston found, and this Court agrees, that while Hall has a First Amendment right to petition the government through the prison grievance system, Hall does not have a due process right in the processing of the appeals. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Hall's clarification of his claim still does not overcome the fact that his due process rights were not violated. Thus, Hall's grievance claim is dismissed.

## VI. Disclosure of Medical Information

Hall voluntarily dismisses his claim under paragraphs 539 to 540 on the grounds that the statements made by Dr. Kohut are more properly viewed as evidence of his personal conflicts and attitudes toward Hall. (Doc. 13 at 39.) Therefore, this claim is dismissed.

## VII. Failure to Screen

Hall also contends that Judge Johnston failed to screen his claim relating to the Defendants failure to post advisory and precautionary notices with regard to the application of restraints involving Hall's right arm. Hall claims in his Amended Complaint that Defendants used excessive force and that he "suffered unnecessary and wanton infliction of great pain of body and mind." (Doc. 10 at 151.)

Eighth Amendment excessive use of force claims contain both a subjective

and an objective component which require two inquiries: (1) whether the official charged with inflicting force acted with a sufficiently culpable state-of-mind; and (2) whether the force used was sufficiently serious to establish a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. But the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Id.* at 9; *see also Oliver*, 289 F.3d at 628 (finding that Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries). Furthermore, "[prison] administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6 (ellipses in original) (citation omitted).

Here, Hall is not alleging an Eighth Amendment excessive use of force claim. He asserts that Defendants were deliberately indifferent to a risk of excessive force by failing to provide an advisory notice regarding his shoulder injury. However, Hall alleges that he was normally handcuffed in front with belly

chains but "relief sergeants . . . do their own thing regardless of what staff regulars say." (Doc. 10 at 118). Defendant Lucier apparently investigated Hall's request and spoke with Mrs. Hiner, the Director of Nursing. They determined that handcuffing Hall behind his back would not cause any further injury to his shoulder. (Doc. 10 at 119.)

Hall alleges that is was inappropriate for Defendants to respond to his grievances by describing them as a security issue. (Doc. 10 at 95, 116, ¶¶ 378, 443.) For the most part, he was cuffed in front—a determination made by security staff. It was the rare occasion that he was cuffed from behind and when this practice was investigated by Defendant Lucier, it was determined that this would not cause further injury to his shoulder. (Doc. 10 at 119.) Hall's belief that he needed to be cuffed in front is simply a difference of opinion with the Director of Nursing who considered the issue and determined that it was unnecessary to issue an order requiring that he be cuffed in front. The Ninth Circuit has made clear that a difference of medical opinion is, as a matter of law, insufficient to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

Moreover, Hall fails to allege an actual excessive force claim because he does not name any particular officer who allegedly handcuffed him from behind

causing him pain or further injury. Therefore, this claim is dismissed.

## VIII.     State Law Claims

Because the Court dismisses Hall's federal claims, the Court declines to exercise jurisdiction over Hall's state law claims. 28 U.S.C. § 1367(c)(3); *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims'" (citation omitted)). This Court agrees with Judge Johnston that judicial economy is not served by retaining jurisdiction over this case. Although Hall requests that the Court accept supplemental jurisdiction, fairness and comity are best served by declining jurisdiction. (Doc. 13 at 40.)

## IX.  Inordinate Delay in § 1915A Screening

Finally, Hall argues that Judge Johnston was assigned to this case on July 13, 2017, but did not screen the Complaint until June 1, 2017, which was an inordinate delay in reviewing his case under 28 U.S.C. § 1915A. Section 1915A requires a district court to screen a complaint as soon as practicable after docketing. However, even in unfortunate situations where a court does not enter judgment in a timely manner, if a prisoner fails to state a claim upon which relief

may be granted, the timeliness issue is not prejudicial. *Fields v. Rahimparast*, 43 F. App'x 966, 969 (7th Cir. 2002) ("[W]hile unfortunate, the delay did not prejudice Fields' case because he had fully recovered before he filed suit, and ultimately the court properly determined that his complaint failed to state a claim."); *Teague v. Mayo*, 553 F.3d 1068, 1072 (7th Cir. 2009) (finding that even if there was a delay in processing prisoner's complaint, there was no effective relief available to him after trial had occurred).

Here, the Court finds that while there was almost a year between the date the Complaint was filed and the initial screening, Hall has not established any prejudice as a result of the delay. Moreover, Hall's original 169-page Complaint and 163-page Amended Complaint complicated and delayed the screening process due to the large number of claims that were asserted in these pleadings. Nonetheless, the Court concludes that because Hall fails to state a claim upon which relief may be granted, the delay did not result in any prejudice.

Reviewing the remainder of Judge Johnston's findings for clear error, and finding none,

IT IS ORDERED that Judge Johnston's Findings and Recommendations (Doc. 9) are ADOPTED IN FULL.

1. Hall's federal claims for relief are DISMISSED WITH PREJUDICE

for failure to state a claim.

2. The Court declines to exercise supplemental jurisdiction over the remaining claims brought under state law and all state law claims should be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3).

3. The Clerk of Court is directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

4. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit. The record makes plain the Amended Complaint lacks arguable substance in law or fact.

5. The Clerk of Court is directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Hall failed to state a claim upon which relief may be granted.

DATED this 26th day of October, 2017.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court