UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| STACY G. HALL, | CV 16-00058-H-DLC-JTJ |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |
| BUDDY MYOTTE, et al., | |
| Defendants. | |

Pending before the Court is Defendants' motion for summary judgment. (Doc. 62.) The motion is fully briefed and ripe for review. After considering the parties' submissions, the Court recommends that the Defendants' motion be **GRANTED**.

I.     Background

Plaintiff Stacy G. Hall is a pro se litigant proceeding on 42 U.S.C. § 1983 claims against several State of Montana Department of Corrections ("DOC") defendants. The Court detailed Hall's factual claims in its June 1, 2017 Findings and Recommendations and will not repeat them here except as necessary. (Doc. 9.) Hall appealed the previous dismissal of his case, and on April 25, 2019, the Ninth

Circuit Court of Appeals reversed and remanded Judge Christensen's order in part. The Ninth Circuit remanded three claims, as follows. (Doc. 24 at 2–3.)

First, Hall alleges that defendants subjected him to dangerous working conditions when they denied him proper equipment to clean high surfaces and instructed him to stand on furniture and fixtures in the cell. He also alleges that defendants subjected him to unconstitutional conditions when they denied him protective gear to prevent exposure to hazardous biological matter. Second, Hall alleges deliberate indifference to his medical needs, in that defendants delayed, denied, and interfered with prescribed physical therapy for his shoulder injury and interfered with the continuous administration of his pain medication. Finally, Hall alleges that he received inadequate medical care in retaliation for filing grievances, specifically from Dr. Kohut.

The Court must address two preliminary matters. First, following the resumption of proceedings in the district court, the many State of Montana Defendants who have subsequently answered waived service and answered Hall's Amended Complaint (Docs. 10 and 29). No other Defendants have appeared or been served. This Court ordered Hall to show good cause for his failure to timely serve any other Defendants by June 29, 2020. (Doc. 49 at 6.) Hall has not done so. Therefore, the Complaint should be dismissed as to the following defendants: P.A. Fisk, Mark Henderson, Pamela Ward Monaco, Samantha Peterson, Cathy Redfern,

Tom Wood, E. Shane Spears, Jonathan Pine, and Stephen Powell. Fed. R. Civ. P. 4(m).

Second, Hall is no longer incarcerated in Montana State Prison ("MSP"), so his claims for injunctive and declaratory relief are moot and should be dismissed. Only his 42 U.S.C. § 1983 claims for damages remain. *Cano v. Taylor*, 739 F.3d 1214, 1217 (9th Cir. 2014).

## II.    Standard for summary judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Once the defendant submits evidence that supports his motion, the plaintiff cannot rest on the pleadings but must come

forward with specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). The Court views the facts and inferences from them in the light most favorable to Hall as the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587-88 (1986); *Betz v. Trainer Worthham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

III.   Analysis

Each of Hall's claims will be taken in turn.

A. Eighth Amendment Claim regarding dangerous working conditions

Hall alleges that his July 7, 2013, fall resulted from constitutionally infirm deliberate indifference to his safety by Defendants Myron Beeson, Alvin Fode, Buddy Myotte. (Doc. 10 ¶¶501–506.) He contends that the Defendants created dangerous working conditions that manifested their deliberate indifference to his safety, in violation of the Eighth Amendment.

The basic facts of the events of July 7, 2013 are as follows. Hall and his inmate co-worker were directed by Defendant Buddy Myotte to clean some cells

that had been previously and incompletely cleaned by the hazardous materials team. (Doc. 77 at 3-4. (Hall disputes various aspects of Defendants' characterization of these facts, as will be noted, but the particulars are not relevant to the sequence of events.)) The cells had had feces smeared in them, and now that the feces had dried, removal was a challenge. Hall and his fellow inmate decided to drench the walls and ceiling with water and cleaning solution in order to make their work easier. (Doc. 10, ¶ 63.) Hall asked Myotte for access to hazardous material protective equipment, to avoid coming in contact with feces.[1] (Doc. 10, ¶ 64 65.) The request for hazardous material protective equipment was denied.

Hall stood on the concrete desk fixture in the cell to reach the ceiling and fell, landing on and seriously injuring his right shoulder. (Doc. 77, ¶ 24.) Hall concludes that requiring him to clean the cell without hazardous material protective equipment and without a step stool amount to violations of the Eighth Amendment by subjecting him to dangerous working conditions.

1.  Defendant Beeson

The three defendants on this claim played different roles in these events. Myotte was directly involved in assigning tasks to and supervising Hall and was

---

[1] Hall's Amended Complaint states that he asked for a chair for use inside the cells, which was approved. (Doc. 10, 64-65.) Later, in other briefing and his deposition, he claims to have asked for and been denied a step stool. These factual differences are not meaningful, except to the extent that Hall's Complaint states that a chair was available to him but he chose not to use it.

present on the day of Hall's accident. (Doc. 65-13 at 8.) Fode was the unit manager and was generally involved in directing Hall's labor but was not present on the day of the fall and does not appear to be involved in specific directions on that day. (Doc. 65-23 at 2.) Fode had previously discussed the lack of hazardous material training and equipment with Hall. (Doc. 10 at 12.)  In contrast, Beeson was the associate warden, and, based on Hall's allegations, was involved to some degree in budgetary and security decisions about what cleaning supplies are available to inmates but otherwise had nothing to do with directing Hall's work. (Doc. 10 at 13-14.)[2]

42 U.S.C. § 1983 will not impose liability on supervising officers under a respondeat superior theory of liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). That is, a defendant will not be held liable just because they oversee the State, a prison, or the Department of Corrections. Instead, supervising officers can be held liable under section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F. 2d 565, 568 (9th Cir. 1987).

---

[2] It should be noted that Hall's Amended Complaint contains pervasive hearsay. Though his factual allegations in the verified complaint regarding his own experiences can be taken at face value, where not contradicted, the hearsay statements of others cannot be given the same credibility. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015).

The Ninth Circuit has identified four general situations in which supervisory liability may be imposed:

> "In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them. The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."

*Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal citations and quotation omitted.)

Based on this case law, Beeson easily evades liability. There is no allegation that he participated in anything related to Hall's working conditions or had any idea about the particular circumstances under which Hall worked. The hearsay allegations against him in the Complaint regarding budgetary constraints or security issues do not add up to evidence of his awareness that staff were subjecting Hall to dangerous working conditions, much less constitutional violations. Hall has not established that Beeson knew of constitutionally infirm working conditions and failed to prevent them. The motion for summary judgment on this claim should be granted as to Beeson.

2.  Buddy Myotte and Alvin Fode

Though Alvin Fode was not involved on the day of the events (Doc. 65-23 at 2), he may at least have been aware of the conditions under which Hall was cleaning cells. Buddy Myotte was at the prison and actively directed Hall and his

co-worker to clean the cell where Hall eventually fell. The question is whether these Defendants violated Hall's Eighth Amendment rights by subjecting him to constitutionally infirm working conditions.

U.S. Supreme Court precedent holds that a prison official violates the Eighth Amendment only when two requirements are met, fulfilling objective and subjective components. First, the alleged deprivation must be, objectively, "sufficiently serious," such that a prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities[.]" *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations and quotations omitted.) Hall must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*.

The second, subjective requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment… To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety." *Id*. (internal quotations and citations omitted.)

### a. Objective risk of harm

The objective component of an Eighth Amendment claim is contextual and responsive to "contemporary standards of decency." *Estelle v. Gamble,* 429 U.S.

97, 103 (1976). "Not every injury that a prisoner sustains while in prison represents a constitutional violation.… More specifically, the Eighth Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official compelled him to perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (internal quotations and citations omitted.) Hall does not allege that the labor was beyond his physical strength or, in itself, caused undue pain. The remaining question, then, is whether cleaning the cell under the conditions he faced endangered his life or health. No reasonable juror could conclude it did.

Hall does an excellent job of recapping the Ninth Circuit case law on prison occupational hazards and the Eighth Amendment. (Doc. 74 at 43-47.) Unfortunately, each of those cases reveals a situation much more objectively hazardous than that confronting Hall himself. Requiring an inmate to clean a cell, even one with fecal matter, without a step stool, does not give rise to an objective claim of cruel and unusual punishment. Hall had been a unit worker, cleaning the cells and around the unit, for seven months at the time of his fall. (Doc. 65-4 at 1.) He had not previously complained that the mopping and wiping was itself dangerous. The two issues that he alleges complicates the matter here are the lack

of a step stool, and the requirement to clean fecal matter without hazardous material protections.

Hall asserts that being forced to clean a cell (and specifically, an eight-foot high ceiling) without a step stool is a constitutional violation. Hall had previously cleaned cells and high places without mishap, though he claims he never cleaned his ceiling. Hall testified in his deposition that he was not aware of incidents where other inmates cleaning cells had been injured. (Doc. 77 at 7.) Hall had previously cleaned high windows. (Doc. 65-13 at 9.) He and his coworker, not Myotte, chose the method of drenching the ceiling. He had previously slipped on wet cement floors, so he was aware of the dangers of wet concrete. (Doc. 65-13 at 9.) Hall chose to stand on the desk from which he fell, while his coworker stood on the bed. His coworker managed to clean the ceiling on this occasion without mishap. There is nothing inherently dangerous about standing on a 32-inch by 16-inch surface to reach what, at that point, would be only moderately overhead. (Doc. 77 at 11.)[3] There is nothing about the conditions under which Hall was cleaning the cell that can be considered objectively dangerous.

---

[3] Hall disputed Defendants' proposed fact of the size of the desk, which relies on the Declaration of D.J. Godfrey. (Doc. 65-1.) Hall's dispute of this fact is only that he never measured it so cannot be sure it is accurate. This reluctance does not undermine the evidence otherwise produced in the record. The Court will accept that Godfrey's measurements are sufficiently accurate.

This case diverges importantly from the kinds of facts alleged in *Morgan v. Morgensen*, one of the controlling cases in the Ninth Circuit relied upon by Hall. 465 F.3d 1041 (9th Cir. 2006.) In *Morgan*, the prisoner plaintiff had notified his supervisor that the printing press he was using was dangerously defective, including bucking and shaking, and it had almost caught his fingers. The plaintiff was told that there was no time to stop for repairs, so he must continue working. His thumb was subsequently torn off. Ultimately, the *Morgan* court held that the defendant was not entitled to qualified immunity, because the plaintiff had a constitutional right not to continue to work with dangerously defective equipment once he had notified his supervisor of the hazard. (The *Morgan* opinion does not reach the ultimate questions of liability or constitutionality.)

Hall never alleges that he told his supervisor that it was dangerous to stand on the desk, despite his attempt to color his previous statements that way in his brief and with case law. He had asked for a step ladder to clean high places prior to any issue with cleaning the cells, but there is no evidence in the record that he stated to Myotte that standing on the desk or bed would be dangerous. Nor did he file a grievance, after one of these requests or orders, that would notify anyone other than Myotte that he had concerns about his safety. (Defendants provide an extensive grievance file with their brief that does not include any such grievance.

11

(Doc. 65-10.) If it exists elsewhere, it was Hall's responsibility to bring it to the Court's attention.)

Nor is standing on a wide desk, on its face, inherently dangerous. The desk and bed are both wide enough for a person to stand without falling to the floor. Hall himself is not sure why he fell, whether he slipped, or mis-stepped, or what. (Doc. 65-13 at 16.) The Supreme Court has made clear that the Constitution is not a freestanding "font of tort law" and does not give rise to a general duty to prevent harm. *Paul v. Davi*s, 424 U.S. 693, 701 (1976). In the end, an accident does not rise to the level of a constitutional violation. "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

Hall focuses specifically on the fecal matter as the objectively dangerous risk to himself. (Doc. 74 at 37.) He has a point, in the sense that working with biologically hazardous material does appear, on its face, riskier than just standing on a desk. His brief cites several cases in which grievously unsanitary conditions may have amounted to constitutional violations.  (Doc. 74 at 35 – 36.) But other cases have found similar conditions constitutionally sound. (Doc. 82 at 5.) The inquiry is whether a reasonable person would find the conditions he encountered to be sufficiently serious to pose a threat to his health. The amount of dried feces in the cell is disputed, but what is not is that he had access to cleaning supplies,

disinfectant packs, water, and showers. (Doc. 65-13 at 13, Doc. 10 at 16.) The
hazardous materials team had already taken a first pass at cleaning the cell. As Hall
himself points out, cases have established that the length of the exposure to
unhygienic material is relevant, and nothing here establishes a prolonged exposure.
(Doc. 74 at 36.)

Hall leans especially heavily on the case of *Fruit v. Norris*, 905 F.2d 1147
(8th Cir. 1990.) The conditions in *Fruit*, in which plaintiffs were forced to work on
a hot summer day in an underground wet well with a constant stream of fresh
sewage, far outstrip the circumstances here. However, *Fruit* never even reaches the
question of whether an Eighth Amendment violation had occurred, only that the
case survived Rule 41(b) dismissal. "Despite the admittedly strong language in this
opinion, we are not holding that appellants have established an eighth amendment
violation." *Fruit v. Norris*, 905 F.2d at 1151. *Fruit* does not do the labor Hall asks
of it.

Hall has never alleged any harm from any risk posed by the fecal matter,
other than his discomfort and concern due to other pre-existing conditions. In his
brief, Hall states that he complained of contaminated water dripping into his eyes
and cites his Complaint, but the paragraphs he cites do not support the language in
the brief. (Doc. 74 at 41, referring to Doc. 10, 63-69.) In any event, nowhere does
he claim or establish that he suffered any ill effect due to contaminated water.

"[N]o compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." *Farrar v. Hobby,* 506 U.S. 103, 112 (1992). Whatever risk may have been hypothesized due to cleaning without haz-mat protections, it came to nothing. *See Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020) (a § 1983 plaintiff must show an injury for which the constitutional deprivation was the actual and proximate cause).

> b. Subjective knowledge of risk disregarded by Defendants

An Eighth Amendment claimant "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842.

If there was no objective risk of serious harm to Hall, it follows that Defendants also did not, subjectively, fail to act despite knowledge of a substantial risk of serious harm.

> "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." ... This "subjective approach" focuses only "on what a defendant's mental attitude actually was."
>
> *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotations

and citations omitted.) The accident that caused his injury was that he fell—somehow he misjudged his step, or slipped, and fell. The likelihood of that happening could occur anytime, and Hall cannot establish that Defendants

somehow knew he was particularly vulnerable to this mishap due to his particular

working conditions and subjected him to those conditions anyway.

### 3.  Qualified immunity

The doctrine of qualified immunity protects government officials from civil

liability where "their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)). "'Qualified immunity gives government officials breathing room to

make reasonable but mistaken judgments,' and 'protects all but the plainly

incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 572 U.S.

3, 6 (2013) (citations omitted).

To determine if an official is entitled to qualified immunity the court

considers two factors:  whether the facts as alleged state a violation of a

constitutional right, and whether the right is clearly established, such that a

reasonable official would have known that his or her conduct was unlawful.

*Saucier v. Katz*, 533 U.S. 194, 200 (2001) (*receded from* by *Pearson v. Callahan*.)

A district court is "permitted to exercise their sound discretion in deciding which

of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Hall may have a clearly established Eighth Amendment right not to be forced to work under substantially dangerous conditions if a supervisor is aware of the danger. "[U]nder certain circumstances, dangerous prison working conditions can give rise to an Eighth Amendment claim[.] *Morgan v. Morgensen*, 465 F.3d 1041, 1043 (9th Cir. 2006), *opinion amended on reh'g,* No. 04-35608, 2006 WL 3437344 (9th Cir. Nov. 30, 2006). However, the Court need not reach that question. As the above analysis demonstrates, the conditions he worked under were not dangerous or constitutionally infirm, and therefore his supervisors could not be aware that he was subject to unconstitutional conditions. Finally, as Hall is no longer incarcerated, there are no injunctive or prospective claims that would preclude qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009). Defendants did not violate his constitutional rights and are entitled to qualified immunity.

### 4.  Due Process claim

Unavailingly, Hall also attempts to create a due process right based on the state-created danger body of law. (Doc. 74 at 48.) The cases cited by him do not occur in the incarceration context, which makes sense—the free agency of citizens and government officials, and their interactions, are simply different outside of a prison's walls. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), cited by Hall to support his position, in fact does the opposite, by showing

that the Eighth Amendment creates the obligations of the State in the prison context. *DeShaney* at 198-99. The Court reviews Defendants' treatment of Hall and his working conditions through the lens of the Eighth Amendment, as explained above.

B.  Hall's claims of deliberate indifference to his medical needs

Hall has sued Heidi Abbott, Mike Batista, Dan Curran, Lance Griffin, Rosanna Hengst, Leroy Kirkegard, Jane Lamoure, Guthrie Lewis, Jane McMahon, Cynthia McGillis-Hiner, Leslie Thornton and Tristan Kohut in connection with his claims about his medical care. Essentially, he has sued almost any person who came into contact with him during his medical treatment at MSP, regardless of their role. Hall's claims regarding his medical care take a few different forms. As construed by the Ninth Circuit, "… regarding his medical deliberate indifference claim, Hall alleged that defendants delayed, denied, and interfered with prescribed physical therapy for his shoulder injury, and that defendants interfered with the continuous administration of his pain medication." (Doc. 24 at 3.)

1.  Standard

To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

As with Hall's conditions of confinement claim above, there are two prongs to the

deliberate indifference analysis. First, a prisoner must show a

"serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious'

medical need exists if the failure to treat a prisoner's condition could result in

further significant injury or the 'unnecessary and wanton infliction of pain.'"

*McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (internal citation

omitted).

Second, a prisoner must show that the defendant's response to that need was

deliberately indifferent. *Jett*, 439 F.3d at 1096. This second prong is met if the

prisoner demonstrates (1) a purposeful act or failure to respond to a prisoner's

medical need and (2) harm caused by the indifference. *Id.* Prison officials are

deliberately indifferent if they deny, delay, or intentionally interfere with medical

treatment. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). *See also*

*Toguchi v. Chung*, 391 F.3d 1051, 1056-57 (9th Cir. 2004).

Hall suffered a serious medical need when he fell, and he does not allege

that the prison officials ignored his need for immediate medical attention or for

continued ongoing treatment. Instead, his claims focus on the second aspect of the

analysis. He alleges that the Defendants interfered with, delayed, and denied the

treatment that the experts they retained prescribed for him, manifesting deliberate

indifference. (Doc. 74 at 51.)

18

2.  Individual Defendants

a.  Dr. Kohut

Hall directs the bulk of his dissatisfaction at Dr. Kohut, who treated him or evaluated him thirteen times between his injury on July 7, 2013 and his transfer to another prison on December 9, 2014. (Doc. 77 at 28.) (Hall disputes this number in his response to Defendants' Statement of Undisputed Facts, because he disputes what happened on these visits. He also disputes the use of the terms "evaluation" and "consultation". Dissatisfaction related to the care he received on those dates does not undermine the fact that Kohut saw Hall roughly every six weeks after his injury, until he was transferred away from MSP.[4])

Kohut also referred Hall for diagnostic imaging outside the prison three times and referred him to physical therapy and orthopedic specialists. (Doc. 77 at 30-31.) At bottom, Hall's complaints against Kohut are particular, about whether the care he received was the best care he could have received. This is not the standard for a deliberate indifference medical claim under the Eighth Amendment. Hall has introduced nothing to show that Kohut's mental attitude was deliberately indifferent to Hall's medical needs, in light of the many actions Kohut took to take care of those needs.

---

[4] Hall also disputes that he saw Kohut on November 10, 2014, but the record contains visit notes from Kohut on this date. (Doc. 65-8 at 34.)

Nor does Hall produce sufficient testimony for the Court to even begin to assess whether his care should have been different. Hall has not shown he was injured by the treatment he received, or that his results would have been better in a prison environment with any other regime of care. It is clear his injury was serious, and he healed slowly, but there is no evidence to establish that anything would have been any different. Hall has provided no expert testimony to establish that his treatment should have been anything other than it was, or that he suffered harm due to Kohut's alleged indifference.

The Ninth Circuit's controlling precedent of *Estelle v. Gamble* is instructive in this matter. In *Estelle*, the plaintiff also was injured during his prison work. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). He experienced ongoing pain and other symptoms of illness and was seen repeatedly by the prison medical staff. He, however, unlike Hall, was eventually punished for refusing to go back to work due to the pain he was experiencing. The Ninth Circuit considered the treatment the plaintiff received and concluded it did not clear the hurdle necessary to state an Eighth Amendment claim.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle v. Gamble*, 429 U.S. at 106.

Hall's complaints never reach beyond a potential standard of malpractice to the level of deliberate indifference. He complains that Kohut's opinions about physical therapy were unqualified, yet he was instructed repeatedly by physical therapists about how to do his exercises, in his cell, if he had to. He was not allowed to do them in a gym, or with all of the equipment he asked for, but given the prison circumstance, these restrictions are to be expected; they do not amount to deliberate indifference.

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court [.]

*Estelle v. Gamble*, 429 U.S. at 107.

Hall also complains about the treatment of his pain, but the record is clear that Kohut and the other staff were responsive to his pain needs. (Doc. 77 at ¶¶ 59 – 60.)[5] One important aspect of these records is that it shows he was prescribed Tramadol for over two months immediately when the accident occurred, and then again for almost five months later, as well as other medications. Clearly the medical staff was responding to his concerns. Hall's disagreement with Kohut's

---

[5] Hall disputes that he was "given" Tylenol. However, the record shows it was prescribed; whether he took it is another question. (Doc. 65-8, at 23.)

treatment choices of medication do not state a colorable Eighth Amendment claim. *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004).

Kohut was not deliberately indifferent to Hall's medical needs. Hall has not successfully created any question of fact that would give rise to a genuine issue for trial. Summary judgment should be granted.

### 3. Defendants Curran, Hengst, Lewis, Griffin, Thornton and McMahon

Hall's claims against the other defendants take a slightly different tack. Defendants Dan Curran (Nurse), Rosanna Hengst (Nurse), Guthrie Lewis (PA), Lance Griffin (PA), Leslie Thornton (Nurse), and Jane McMahon ("health care service personnel") were all employed in the infirmary at MSP in different capacities. (Doc. 63 at 27; Doc. 10 at 6-7.) Hall's claims against them are that "their inaction constitutes deliberate indifference" because they "remain[ed] silent and sat idly by as Hall suffered." (Doc. 74 at 56.) Despite the rhetorical appeal of this argument, the law requires more.

In supporting his allegations against these defendants, Hall points to the many places in the record where he crossed paths with them in the infirmary. (Doc. 74 at 54 – 55.) But he cannot establish deliberate indifference. First, he does not establish that any of them had any capacity to change the care he was given, as none of them are doctors. Second, he does not establish that any of them did anything worse than respond to his requests as they were able to within their

various roles. Indeed, the records reflect attempts to respond to his requests for changes in medicine, or attention to his various symptoms, etc. (*See generally* Doc. 65-8 at 34 – 68.) The lack of specificity in Hall's claims against these Defendants reflects the fact that he blames these providers generally, without really being able to point to any occasions when they violated his constitutional rights. He may be asking for different or better medical care, but no reasonable person could conclude that these defendants were deliberately indifferent to his medical needs.

### 4. Defendants Abbott, Batista, Beeson, Kirkegard, Lamoure, and McGillis-Hiner

Hall's complaints about Defendants Abbott, Batista, Beeson, Lamoure, Kirkegard, and McGillis-Hiner are grounded in their denial of his grievances. (Doc. 65-10, pp. 1-262.)

The sole factual allegations regarding Kirkegard are his receipt of kites from Hall complaining about his care, which Hall acknowledges were forwarded to Beeson for review, and then to the medical staff. (Doc. 10 at ¶¶242-43, 269.) As explained above, the Court will not impose vicarious liability on a § 1983 claim, without a showing that the superior officer had some hand in directing or failing to stop a constitutional violation. The rationale for avoidance of vicarious liability is especially clear here, where Kirkegard, as warden of the prison and not a medical professional, would have no reason to interpose his treatment views into Hall's care.

Hall asserts that his grievances regarding medical care were consistently denied, but that it is an inaccurate description of what most often occurred—either his request for medical attention was answered with an appointment with a provider, or a person who had no capacity to change his treatment stated that he would be treated in accordance with the medical doctor's plan. Signatures on the grievance records can be difficult to read, and the parties have not specifically pointed to examples to support their positions. However, for example, Doc. 65-10 at 16 is typical of several nurse's grievance responses in which Hall complains about his medical treatment, and the nurse responds with an explanation of what he has received and the ongoing proposed course of treatment. (See, e.g., 65-10 at 47 - 48.) Hall hasn't established that there is a genuine issue for trial on whether these individuals exhibited deliberate indifference to his medical needs in violation of the Eighth Amendment. Summary judgment is appropriate.

### 5. Defendant Zuber

Hall's sole claim against Defendant Captain Michael Zuber is that on two occasions, on October 16, 2013 and January 15, 2014, Zuber instructed officers not to remove Hall's restraints for physical therapy. The documents appear to show that on these two occasions, Hall was transported for physical therapy, but the accompanying officers would not remove his restraints, based on "command post" instruction. (It appears from the less-than-clear record that Captain Zuber was in

the command post, not with Hall.) Later there was clarification that Hall's

restraints could be removed from his upper body, perhaps one arm at a time, but

his legs would remain shackled. (See, e.g., Doc 65-8 at 117.)

Hall has a history of escape from incarceration, which is why Defendants

were cautious about his restraints. (Doc. 77, ¶¶ 64 – 66.) Hall's missed

appointments were rescheduled, so the strongest claim he would have as a result of

Zuber's actions was a claim for delay. (Doc. 65-10 at 175 – 182; Doc. 65-10 at 200

– 203.) Both times, he was almost immediately rescheduled. Hall has introduced

no evidence that these delays caused him any harm whatsoever. In this instance, on

these facts, delay did not amount to deliberate indifference to Hall's medical needs.

Summary judgment for Defendant Zuber is appropriate.

C. Retaliation

Hall asserts that Dr. Kohut retaliated against him in terms of his health care

because Hall filed this lawsuit. "A prisoner suing prison officials under section

1983 for retaliation must allege that he was retaliated against for exercising his

constitutional rights and that the retaliatory action does not advance legitimate

penological goals, such as preserving institutional order and discipline." *Bruce v.

Ylst*, 351 F.3d 1283, 1288 (9th Cir.2003) (citations and internal quotations

omitted). "Within the prison context, a viable claim of First Amendment retaliation

entails five basic elements: (1) An assertion that a state actor took some adverse

action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F. 3d 893, 899 (9th Cir. 2000). *Compare* Huskey, 204 F.3d 893 (summary judgment proper against plaintiff who could only speculate that adverse employment decision was due to his negative comments about his supervisor six or seven months earlier) with *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315 – 16 (9th Cir. 1989) (evidence of timing and nature of suspensions sufficient to infer retaliatory motive). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). "Timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Plaintiff must show that the alleged retaliation was a "substantial" or "motivating" factor in the decision resulting in the adverse action. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315 (9th Cir.1989) (citation omitted).

Plaintiff also must prove the absence of legitimate penological reasons for the alleged retaliatory conduct. *See Pratt v. Rowland*, 65 F.3d at 806.

In the First Amendment context, a plaintiff generally raises a genuine issue of material fact on the question of retaliatory motive when the plaintiff "produces, in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual." *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 771 n. 21 (9th Cir.2006) (citing *Keyser v. Sacramento City Unif. Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir.2001)).

The only "adverse actions" Hall can point to are continued—though in Hall's view, unsatisfactory--health care, recommendations regarding physical therapy that supposedly conflicted with the physical therapists' instructions, and changes in his prescription medicine regime. If he cannot show that the care he received evinced deliberate indifference, then he cannot establish that the care is an adverse action that was retaliation for his grievances. Nor does Hall point to any change in care that could provide the nexus between his grievances and some retaliatory conduct. Hall has not pointed to a genuine issue of material fact that would preclude summary judgment on his retaliation claim.

27

D. State law Negligence Claim

Given that the Court should grant summary judgment to Defendants on Hall's § 1983 claims in this matter, the Court should decline its supplemental jurisdiction over Hall's state law claims. 28 U.S.C. § 1367(c)(3); see also *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims' " (citation omitted)).

IV.   Conclusion

The record before the Court is extensive and the briefing voluminous. However, in the end, there are no genuine issues of material fact that prevent entry of summary judgment on behalf of Defendants.

Based on the foregoing, the Court enters the following recommendations:

1. Defendants P.A. Fisk, Mark Henderson, Pamela Ward Monaco, Samantha Peterson, Cathy Redfern, Tom Wood, E. Shane Spears, Jonathan Pine, and Stephen Powell should be dismissed without prejudice;

2. Plaintiff's claims for injunctive and declaratory relief should be dismissed with prejudice;

3. Defendants' motion for summary judgment (Doc. 62) should be granted;

4. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims; and

5. The clerk of court should enter judgment for Defendants by separate document.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may object to the Findings and Recommendations within 14 days. *See* 28 U.S.C. § 636(b)(1).[6] Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

DATED this 2nd day of March, 2021.

_____
John Johnston
United States Magistrate Judge

---

[6] This deadline allows a party to act within 14 days after the Findings and Recommendation is "served." Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.